IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| v. | **NO. 3:09-CR-04-RLV** |
| **JEFFREY WALLACE EDWARDS** and **FRONTIER HOLDINGS, INC.,** | |
| **Defendants.** | |

## FINAL ORDER, REPORT AND RECOMMENDATION

Defendants Jeffrey Wallace Edwards ("Edwards") and Frontier Holdings, Inc. ("Frontier")(collectively, "Defendants") are charged, in a 22-page second superseding indictment, with mail fraud, wire fraud and money laundering. The indictment also contains a forfeiture provision.

The indictment alleges that Edwards was Chief Executive Officer of Frontier and controlled Frontier's decisions and operations. According to the indictment, Defendants operated an investment fraud scheme that:

- purported to operate "high yield" investment programs in which investors would receive a high rate of return in a short period of time;

- recruited investors through false material representations regarding the existence of investment programs and Edwards' personal status and holdings;

AO 72A
(Rev.8/82)

- falsely represented to potential investors that Edwards had a Federal Reserve account, that Edwards owned a bank, that Edwards worked as a special agent of the Federal Reserve, and that the United States Government had authorized Edwards to stimulate the economy with cash injections;

- induced investors to give Edwards more than $7.4 million to invest in his "high "yield" investment programs;

- entered into a "Private Placement Facilitation Agreement" with Dr. J.M. and S.I., Ltd.[1], a Hong Kong corporation that engages in humanitarian projects around the world. Edwards promised to use his best efforts to return a profit of 800 percent on S.I. Ltd's investment within ten days of the execution of the agreement. After J.M. and S.I., Ltd. transferred approximately one million dollars into Edwards' personal bank account, Edwards transferred that money into another account, and then used those funds to purchase real estate for his personal benefit;

- used investors' funds to buy personal assets such as real estate, vehicles, jewelry, fur coats, art, gambling trips and family cruises;

- in response to investors' inquiries and demands for payment, falsely assured investors that their funds were safe and earning large amounts daily;

---

[1] Dr. J.M. has been indentified as Dr. Jacob Moor ("Dr. Moor") and S.I. Ltd. has been identified as Shatton Industries, Ltd. ("Shatton").

2

AO 72A
(Rev.8/82)

- gave false excuses for not producing the investment returns Edwards and Frontier promised; and

- attempted to conceal the fraudulent nature of Edwards' investment scheme by fabricating or causing to be fabricated fictional documents.

Counts One through Six of the indictment each set forth individual deliveries of envelopes containing money from investors to an address in Bremen, Georgia in furtherance of the scheme to defraud, in violation of the mail fraud statute. Counts Seven through Twenty-Six of the indictment set forth individual wire transfers of moneys from investors to Edwards' accounts, in furtherance of the scheme to defraud, in violation of the wire fraud statute. Counts Twenty-seven through Thirty-seven charge individual instances of money laundering.

On September 9, 2009, I issued a Report and Recommendation and certified this case ready for trial. After Defendants filed a number of additional discovery-related motions, on January 20, 2010 [Doc. 54] then-District Court Judge Jack T. Camp decertified the case and referred it back me for additional proceedings. Defendants thereafter filed additional motions.

On March 12, 2010, I issued a second order, addressing Defendants' motions and once again certified this case ready for trial, and it was set on a September, 2010 trial calendar.

On October 20, 2010, the case was transferred to United States District Judge Robert L. Vining, Jr. On October 27, 2010, Judge Vining issued an order permitting Defendants to file motions for reconsideration or new motions, and on January 14, 2011, Judge Vining decertified this case again, referring it to me for further proceedings. [Doc. 118]. A first superseding indictment was returned on January 19, 2011, and a second superseding indictment was returned on February 15, 2011. The following motions are pending and are ruled on below by order or recommendation:

- Motion for Rehearing on all Rulings by Honorable Jack T. Camp [Doc. 94]

- Motion to Transfer Venue [Doc. 97]

- Motion to Dismiss Indictment [Doc. 99]

- Motion to Dismiss Indictment for Outrageous Government Conduct [Doc. 110]

- Motion for Leave to File Proposed Jury Questionnaire [Doc. 100]

- Motion to Take Deposition of Jacob Moor, Ph.D. [Doc. 101]

- Motion for Hearing with regard to the Government's Purported Expert Witnesses [Doc. 103]

- Motion for Bill of Particulars [Doc. 104]

- Motion to Sever Counts [Doc. 111]

- Motion in Limine to Bar the Government's Expert Witnesses From Testifying at Trial [Doc. 102]

- Motion to Dismiss Second Superceding Indictment [Doc. 145]

- Motion to Dismiss Indictment for Outrageous Government Conduct [Doc. 146]

- Motion to Sever Counts [Doc. 147]

- Motion to Bar the Government's Expert Witness from Testifying at Trial [Docs. 148 and 149][2]

- Motion for Daubert Hearing Prior to Trial [Doc. 150]

- Motion to Have Their Proposed Jury Questionnaire Submitted to the Jury [Doc. 151]

- Motion for Bill of Particulars [Doc. 152]

- Motion to Strike Counts [Doc. 153]

- Motion to Suppress Edwards' Testimony in the Shatton Case [Doc. 155]

- Motion to Take Deposition of Jacob Moor, Ph.D. [Doc. 164]

---

[2] Defendant stated that the duplicate filings in Document 148 and 149 was an administrative error. He intended to file two different motions but inadvertently filed the same document twice. The Court granted him leave to file the correct motion after the pretrial conference. (See Doc. 164.)

5

In addition, the government has filed Motions in Limine to Exclude Arguments Based on Investors' "Due Diligence" or "Reasonable Reliance" [Docs. 78, 109, and 156], which I will address first. My orders (on non-dispositive motions) and recommendations (on dispositive motions) follow.

## I.   Motion in Limine to Exclude Arguments Based on Investors' "Due Diligence" or "Reasonable Reliance" [Docs. 78, 109, and 156]

In these motions, the government moves the Court to exclude any questioning or remarks by defense counsel whose only relevance to this case is to suggest that investors 1) failed to exercise due diligence and 2) could not have reasonably relied upon Defendants' representations. The government argues, and Defendants agree, that the Eleventh Circuit has rejected the notion that schemes to defraud must have been reasonably calculated to deceive an ordinarily prudent person. See United States v. Svete, 556 F.3d 1157, 1169 (11th Cir. 2009)(en banc); United States v. Jennings, 599 F. 3d 1241, 1253, and n. 25 (11th Cir. 2010). Defendants state that they recognize that Svete forecloses "due diligence" and "reasonable reliance" arguments to the jury and jury instructions. However, Defendants argue that Svete does not foreclose them from developing the factual record with regard to each transaction for which they are criminally charged.

6

To the extent that Defendants believe that they can develop facts whose only relevance is to the issue of "due diligence" and "reasonable reliance", they are wrong. Any such facts would be irrelevant. Of course Defendants are not precluded from developing facts that are relevant to some other defense. I do not construe the government's motion as a request to exclude such facts. Accordingly, the government's motions [Docs. 78, 109, and 156] are GRANTED.

## II. Defendants' Motion for a Re-Hearing on All Rulings by Judge Camp, or, in the Alternative an Evidentiary Hearing with Regard to Judge Camp's Impairment by his Chronic Drug Abuse [Doc. 94]

The District Court has given Defendants an opportunity to file motions for reconsideration on all rulings made by Judge Camp and to file new motions. Therefore, Defendants' Motion for Rehearing [Doc. 94] is DENIED AS MOOT.

## III. Motion to Transfer Venue [Doc. 97]

Defendant moves to transfer venue of this case out of the Newnan Division of this Court. The Government consents to Defendants' motion (Doc. 108), and the District Court intends to conduct the trial in the Rome Division. Therefore, Defendants' Motion to Transfer Venue [Doc. 97] is GRANTED.

7

**IV.     Defendants' Motion to Dismiss Indictment [Docs. 99, 145]**

Defendants claim that the indictment should be dismissed because it fails to 1) charge them with making material misrepresentations; 2) set forth their material misrepresentations and the specific circumstances under which they were made; and 3) explain why the Defendants' promissory notes are fictional. Defendant also alleges in Doc. 145 that paragraph six of the Indictment fails to state a fraud claim.

As set forth in my Order, Report and Recommendation of September 9, 2009, [Doc.40], the indictment alleges that Defendant Edwards recruited investors with:

> material misrepresentations regarding, among other things, the existence of actual investment programs, and his personal status and holdings. At times, EDWARDS misrepresented to investors and potential investors that he had "a Federal Reserve account" and that he owned a bank. At times, Edwards misrepresented to investors and potential investors that he worked as a "special agent" of the Federal Reserve and that the United States Government had authorized him to stimulate the economy with cash injections.

These allegations are incorporated into all of the mail and wire fraud counts of the indictment. As described above, the indictment also alleges other material misrepresentations. Therefore, this ground for Defendants' motion fails. Defendants' disagreement with the allegations is a matter for resolution by a jury, not at the pre-trial stage.

8

As for Defendants' allegations with respect to paragraph six, Defendants argue the merits of the case in defense of their dealings with Dr. Moor, a purported victim. Any such arguments are premature at the pre-trial stage. Defendants are free to made these arguments to the jury at trial. Moreover, paragraph six cannot be viewed in isolation. It is part of a longer indictment which is legally sufficient.

The remainder of Defendants' arguments also attack the sufficiency of the allegations in the indictment. For reasons set forth in my Order, Report and Recommendation of September 9, 2009, [Doc.40], the indictment is constitutionally sufficient. Therefore, I recommend that these motions [Docs. 99 and 145] be DENIED.

## V.   Motion to Dismiss Indictment for Outrageous Government Conduct [Docs. 110, 146]

Defendants contend that the indictment should be dismissed for "outrageous government conduct." The alleged outrageous government conduct consists of: (1) misrepresenting that Defendant Edwards enticed Dr. Moor and Shatton to transfer one million dollars into Edwards' personal bank account; (2) obtaining information, documents, and other cooperation from Dr. Moor and his attorneys; (3) bias by former District Judge Camp during the Shatton Industries civil litigation; and (4) misuse by the government of its civil forfeiture case as an investigative tool for its criminal case.

9

In response to allegation (1), the government does not dispute that Dr. Moor had not met Edwards prior to the transfer of one million dollars from Dr. Moor into Edwards' bank account. However, the government states that it will prove at trial that Edwards communicated fraudulent representations to Dr. Moor through means other than in-person conversations, including written and oral misrepresentations passed on by intermediaries.

As to allegation (2), the government correctly points out that cooperation between the government and an alleged victim of a crime is not improper.

As to allegation (3), any purported bias by former District Judge Camp during the Shatton Industries civil litigation is irrelevant to the current criminal litigation.

With regard to the civil forfeiture case, as the government points out, the government may properly bring a civil forfeiture case that is parallel to a criminal investigation. Moreover, the government never sought discovery in its civil forfeiture case; rather, once Defendants' counsel served the government with requests for discovery, the government moved to stay the civil case. To the extent that Edwards contends that he has been harmed by his answer to the complaint in the civil forfeiture case, that contention is without merit. Edwards' decision to answer the civil forfeiture complaint was a strategic choice made by Edwards at a time when he was represented

by counsel. Edwards could have moved to stay the civil proceedings rather than answer the complaint. The district court ordered Edwards to answer the complaint only after Edwards voluntarily withdrew his motion to stay the proceedings. (Case 3:08-cv-00101, Doc. 51, p. 5).

In sum, there is no basis to dismiss the indictment for outrageous government conduct. I therefore RECOMMEND that these motions [Docs. 110 and 148] be DENIED.

### VI. Motion to Have Defendants' Proposed Jury Questionnaire Submitted to the Jury [Docs. 100, 151]

Defendants have submitted a proposed jury questionnaire. Among other things, the questionnaire states that the court and the parties estimate that after the jury is selected, the case may last approximately four to five weeks. The government disagrees with the estimate of a four to five week trial. [Doc. 106]. On that ground alone, the proposed questionnaire should be rejected. Whether to use a different questionnaire is within the discretion of the district court judge. Therefore, these motions [Docs. 100 and 151] are DENIED.

### VII. Motion to Take Deposition of Jacob Moor, Ph.D. [Docs. 101, 164]

The government contends that Shatton and its Chief Executive Officer, Dr. Jacob Moor, are victims in this case. The indictment alleges that Edwards caused Shatton and

11

AO 72A
(Rev.8/82)

Dr. Moor to transfer approximately one million dollars to Edwards' personal bank account in furtherance of the alleged scheme to defraud. The transfer of those funds is charged as wire fraud in Count Twenty-six of the superseding indictment.

Prior to the indictment in this case, Shatton and Dr. Moor brought a civil action against Defendants in this court, styled Shatton Industries Ltd. v. Edwards, et al., 3:07-CV-00051-JTC. Defense counsel Gary Bunch, who also represented Edwards in the civil case, deposed Dr. Moor for more than two days in that litigation. Dr. Moor and Shatton Industries also deposed Edwards, who chose to answer questions rather than invoke his Fifth Amendment right against self-incrimination.

The government hopes to call Dr. Moor as a witness in this case but cannot confirm that he will testify because Dr. Moor is currently in Nigeria, outside the subpoena power of the United States. The government states that it understands from Dr. Moor's counsel that Dr. Moor's availability to appear at trial in Georgia depends on the trial schedule and other factors beyond the government's control. Even if Dr. Moor does not testify, the government may attempt to prove the allegations in Count Twenty-six of the indictment through admissions made by Edwards in his civil deposition and other evidence.

Depositions in criminal cases are generally disfavored. See United States v. Drogoul, 1 F.3d 1546, 1551-52 (11th Cir. 1993). However, the Federal Rules of Criminal Procedure authorize the taking of depositions for use in criminal cases in exceptional circumstances. Id.; Fed. R. Crim. P. 15(a). The burden is on the moving party to establish those exceptional circumstances. Whether to authorize a deposition is in the discretion of the district court. Drogoul, 1 F.3d at 1552.

Here, Defendants have not shown exceptional circumstances that would justify the taking of Dr. Moor's deposition. Despite the availability of Dr. Moor's lengthy deposition in the civil case, Defendants' motion makes no showing that Dr. Moor's testimony would be helpful to them.

Defense counsel mentions only the following facts in support of his argument that he needs to take Dr. Moor's deposition:

1. Admissions by Dr. Moor that Shatton transferred funds to Edwards' bank account before he met or spoke with Edwards, based upon the representations of two intermediaries or consultants who had interacted with Edwards;

2. An admission by Dr. Moor that the contract between Frontier and Shatton concerning the transfer of funds to Edwards was drafted by Dr. Moor's London-based attorney; and

13

3. An admission by Dr. Moor that he attempted to participate in another high yield private program in the past.

These admissions do not demonstrate exceptional circumstances that would authorize the taking of a deposition for use in the criminal trial.

Finally, Defendants' motion to depose Dr. Moor should be denied because Defendants have made no showing that a deposition of Dr. Moor in Nigeria is even possible. Cf. Drogoul, 1 F.3d at 1554-55 (finding that the district court erred in denying the prosecution's motion for pretrial depositions to be taken in Italy, in part because the Italian court had agreed to conduct the depositions in a manner that would make them arguably admissible at trial in the United States).

For these reasons, Defendants' motion [Doc. 101] is DENIED.

### VIII. Motions to Exclude Expert Witnesses and for Hearing with Regard to the Government's Purported Expert Witnesses and their Proposed Testimony [Docs. 102, 103, 150]

Defendants' motions request a hearing pursuant to Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993) with respect to the government's proposed expert witnesses James E. Byrne, a law professor, and Sean O'Malley, an official with the Federal Reserve. Defendants also move to exclude the testimony of these witnesses. These issues were fully discussed in my order of March 11, 2010, and Defendants have

14

presented no grounds for a different opinion. Thus, for reasons expressed in my order of March 11, 1010 (see Doc. 65), Defendants' motions [Docs. 102, 103 and 150] are DENIED.

### IX. Motion for Bill of Particulars [Docs. 104, 152]

Defendants' Motion for Bill of Particulars is virtually identical to their previously filed Motion for Bill of Particulars on which I ruled on September 9, 2009. (Doc. 40). The government has agreed to inform the Defendants of any intermediaries it contends were used by Defendants. As to the remaining requests, Defendants have provided no basis for a different ruling. Therefore, Defendants' motions [Docs. 104 and 152] are DENIED for the reasons stated in my order of September 9, 2009.

### X. Motion to Sever Counts [Docs. 111, 147]

Defendants have moved under Rule 14(a) of the Federal Rules of Criminal Procedure to sever the count relating to Dr. Moor and Shatton[3] from the remaining counts in the indictment. Rule 14(a) states that if joinder of offenses in an indictment "appears to prejudice a defendant ..., the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice so requires." Fed.R.Crim.P. 14(a).

---

[3]This Count was originally Count Thirty-five. In the second superseding indictment, it is Count Twenty-six.

15

Defendants have presented no basis to sever the count relating to Dr. Moor and Shatton from the remaining counts. They allege that they will be prejudiced by "spillover" if the counts are not severed because the transaction with Dr. Moor and Shatton involved a contract and correspondence, whereas the transactions with the other alleged victims had no contracts and little correspondence. This argument is without merit. The government has alleged that the transactions relating to Dr. Moor and Shatton are part of the larger scheme to defraud. The district judge can prevent any unfair spillover effect by instructing the jury that each count charges a separate offense and the government must prove each count beyond a reasonable doubt. Therefore, the Motions to Sever Counts [Docs. 111 and 147] are DENIED.

## X. Motion to Bar The Government's Expert Witnesses from Testifying at Trial [Docs. 148, 149]

This motion is essentially the same as Defendants' previous Motion to Strike the Government's expert witnesses [Doc. 51] which I ruled on in my order of March 12, 2010. [Doc. 65] For reasons stated in that order, this motion is DENIED.

## XI. Motion to Suppress Defendant Edwards' Testimony in the Shatton Case [Doc. 155]

Defendants have moved to suppress statements that defendant Edwards made in depositions and sworn court testimony in a civil case brought by one of the victim

16

investors, Shatton Industries, in 2007. Defendants argue that Judge Camp was biased against them and mentally impaired at the time he presided over the civil case. However, any alleged bias or impairment on the part of Judge Camp in the civil case is irrelevant to the current criminal case.

Judge Camp's rulings in the civil case would be relevant only if Judge Camp somehow prevented Defendant Edwards from exercising his Fifth Amendment right to remain silent in the civil case. Defendant concedes that Judge Camp never expressly prevented Defendant Edwards from invoking his Fifth Amendment right to remain silent in the civil action. Moreover, as set forth by the government in its response, Doc. 163, Defendant Edwards was represented by Mr. Bunch during the civil depositions. At the first deposition, Mr. Bunch stated on the record that he had advised Edwards of the risks and benefits of testifying versus invoking the Fifth Amendment and that Edwards decided to testify after he was advised by counsel of the risk of doing so. [Doc. 163 at p. 3].

If Defendant disagreed with any of Judge Camp's rulings, he, of course had the right to appeal. He did not do so. The parties agreed to settle the lawsuit in January 2008, and Edwards agreed to pay $750,000 to the Court's escrow agent by March 24, 2008. However, Edwards wrote the Court's escrow agent a bad check, and when it

17

bounced, the plaintiffs moved to have the defendants held in contempt of the Court's order.

The plaintiffs deposed Edwards in connection with their contempt motion on May 30, 2008. The transcript shows that defense counsel was again present and recognized that the deposition was being taken in a civil matter and that the plaintiffs "had the right" to depose Edwards.

The Court conducted a hearing on the plaintiffs' contempt motion on June 3 and 4, 2008. At the beginning of Edwards' testimony, the Court acknowledged that Edwards was entitled to invoke his Fifth Amendment rights in the civil contempt proceeding.

In sum, Defendants' motion to suppress his testimony from the civil case has no factual or legal basis. I therefore, recommend that the motion [Doc. 155] be DENIED.

## XII.  CONCLUSION

In sum, I **ORDER** as follows:

- The government's Motions in Limine to Exclude Arguments Based on Investors' "Due Diligence" or "Reasonable Reliance" [Docs. 78, 109 and 156] are **GRANTED;**

- Defendants' Motion for Rehearing on all Rulings by Honorable Jack T. Camp [Doc. 94] is **DENIED AS MOOT;**

- Defendants' Motion to Transfer Venue [Doc. 97] is **GRANTED**;

- Defendants' Motions for Leave to File Proposed Jury Questionnaire [Docs. 100 and 151] are **DENIED**;

- Defendants' Motions to Take Deposition of Jacob Moor, Ph.D. [Docs. 101 and 164] are **DENIED**;

- Defendants' Motion in Limine to Bar the Government's Expert Witnesses From Testifying at Trial [Doc. 102] is **DENIED**;

- Defendants' Motion for Hearing with regard to the Government's Purported Expert Witnesses [Doc. 103] is **DENIED**;

- Defendants' Motion for Bill of Particulars [Doc. 104] is **DENIED**;

- Defendants' Motions to Sever Counts [Docs. 111 and 147] are **DENIED**;

- Motion to Bar the Government's Expert Witness from Testifying at Trial [Docs. 148 and 149] are **DENIED**;

- Motion for Daubert Hearing Prior to Trial [Doc. 150] is **DENIED**;

- Motion for Bill of Particulars [Doc. 152] is **DENIED**;

19

AO 72A
(Rev.8/82)

- Motion to Strike Counts[4] [Doc. 153] is **DENIED**;

In addition, I **RECOMMEND**:

- that Defendants' Motions to Dismiss Indictment [Docs. 99 and 145] be **DENIED**;

- that Defendants' Motions to Dismiss Indictment for Outrageous Government Conduct [Docs. 110 and 146] be **DENIED**;

- that Defendants' Motion to Suppress Edwards' Testimony in the Shatton Case [Doc. 155] be **DENIED**;

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial.  It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this  18th   day of April, 2010.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

---

[4] This motion was based on an error in scanning the indictment into CM/ECF, which resulted in the omission of page 5 of the indictment.  This error has now been corrected.

20